**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **MCOM IP, LLC,**         )<br>     Plaintiff,            )<br>                               )    Civil Action No. 6:21-cv-00325<br>**v.**                             )<br>                               )<br>**NCR CORPORATION,**  )    **JURY TRIAL DEMANDED**<br>     Defendant.          ) | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

mCom IP, LLC ("mCom") files this Original Complaint and demand for jury trial seeking relief from patent infringement of the claims of U.S. Patent No. 8,862,508 ("the '508 patent") (referred to as the "Patent-in-Suit") by NCR Corporation, ("NCR").

### I.  THE PARTIES

1.  Plaintiff mCom is a Texas Limited Liability Company with its principal place of business located in Harris County, Texas.

2.  On information and belief, NCR is a corporation existing under the laws of the State of Maryland. On information and belief, NCR sells and offers to sell products and services throughout Texas, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Texas and this judicial district. Defendant may be served at its place of business, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 260, Austin, TX 78701-3136.

### II.  JURISDICTION AND VENUE

3. This Court has original subject-matter jurisdiction over the entire action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's claim arises under an Act of Congress relating to patents, namely, 35 U.S.C. § 271.

4. This Court has personal jurisdiction over Defendant because: (i) Defendant is present within or has minimum contacts within the State of Texas and this judicial district; (ii) Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district; and (iii) Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Texas and in this judicial district.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b). Defendant has committed acts of infringement and has a regular and established place of business in this District. Further, venue is proper because Defendant conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Texas and this District.

### III.  INFRINGEMENT

#### A. Infringement of the '508 Patent

6. On October 14, 2014, U.S. Patent No. 8,862,508 ("the '508 patent", attached as Exhibit A) entitled "System and method for unifying e-banking touch points and providing personalized financial services" was duly and legally issued by the U.S. Patent and Trademark Office. MCom owns the '508 patent by assignment.

7. The '508 patent relates to novel and improved systems and methods for providing a unified banking system.

8. NCR maintains, operates, and administers methods and systems of unified banking systems that infringe one or more claims of the '508 patent, including one or more of claims 1-20, literally or under the doctrine of equivalents. Defendant put the inventions claimed by the '508 Patent into service (i.e., used them); but for Defendant's actions, the claimed-inventions embodiments involving Defendant's products and services would never have been put into service. Defendant's acts complained of herein caused those claimed-invention embodiments as a whole to perform, and Defendant's procurement of monetary and commercial benefit from it.

9. Support for the allegations of infringement may be found in the following preliminary table:

| 1. A method for constructing a unified electronic banksin environment, said method comprising teh stpes of: | Product: NCR Connections Cx Banking – Mulit-Channel Solution |
|---|---|
| a) providing at least one common multi-channel server coupled to more than one e-banking touch points<br>b) and also coupled to at least one computer system<br>c) configured with at least one control console, said more than one e-banking touch points and said at least one computer system being<br>d) provided in locations remote from the other, and further wherein said more than one plurality of e-banking touch points are<br>e) comprised of at least two different types of e-banking touch point devices,<br>f) each of which comprise one or more of an automatic teller/transaction machine (ATM), a self-service coin counter (SSCC), a kiosk, a digital signage display, an online accessible banking website, a personal digital assistant (PDA), a personal computer (PC), a laptop, a wireless device, or a combination of two or more thereof, | <br> |

| | |
|---|---|
| g) and wherein at least one of said e-banking touch points is in communication with one or more financial institutions through said multi-channel server; | |
| h) receiving an actionable input from at least one e-banking touch point; | |

4

| | |
|---|---|
| | INETCO Insight has been specifically configured to pass real-time transaction alerting information directly into the APTRA Vision environments. Exceeding transaction alerts, transaction event and counts incident created and APTRA Vision monitoring thresholds generates an alert in INETCO Insight. The alert is picked up APTRA Vision managed based on user-defined rules web-based User Interface in APTRA Vision and incidents created based on user defined rules when required. |
| I) retrieving previously stored data associated with said actionable input, | NCR Connections is a multi-channel solution enabling the creation and deployment of modern, interactive and personalized consumer services.<br><br>The thin-client architecture replaces the heavy and time consuming traditional technical releases and enables lightweight consumer targeted services management with the flexibility to start, stop, update or extend consumer service with ease. All logical and presentation content is now controlled centrally from the Connections server so changes (rebranding, new services, logical flow changes etc.) can now be deployed in significantly less time, cost and complexity.<br><br>NCR Connections is based on modern web technology and can be easily integrated into a variety of physical and digital channels (ATM, Kiosk, Tablet, Web etc.) to enable a consistent user-experience and service offering.<br><br>**Benefits of NCR Connections**<br><br>• User experience on the physical channel can now be consistent with other digital channels (gesture control, dynamic content etc.)<br>• Consumer experience can be highly personalized through simple integration with backend services (CRM and internal databases)<br>• Complementary technology choices to adjacent digital channels means maximum reuse of a customer's existing services, integrations and designs<br>• Tailor the services offered based on a wide variety of segments (consumer profile, location, time, terminal type etc.)<br>• Our server based architecture enables the enrichment of services on the client without any interruption or client software changes.<br><br>Separate "switching", transaction processing and terminal driving from business services delivers:<br>• Cost reductions<br>• Speed to market<br>• Switching reduced to a standard "commodity"<br>• Enable the agility the business requires to meet the demands of empowered consumers<br> |

| | |
| --- | --- |
| J) wherein said previously stored data is accessible to any one of said e-banking touch points,<br><br>K) and said previously stored data comprises data from one or more financial institutions and one or more user-defined preferences;delivering said retrieved data to said at least one e-banking touch point transmitting said actionable input; |  |
| L) storing transactional usage data associated with said at least one e-banking touch point transmitting said actionable input,<br><br>M) wherein said stored transactional usage data is accessible by any one of said more than one e-banking |  |

| | |
|---|---|
| N) monitoring via said server an active session in real-time for selection of targeted marketing content correlated to said user-defined preferences; |  |

| | |
|---|---|
| O) subsequent to said monitoring, selecting in real-time said targeted marketing content correlated to said user-defined preferences; and |  |
| P) transmitting in real-time said targeted marketing content during said active session to at least one of said e-banking touch points for acceptance, rejection, or no response by a user, <br><br>Q) wherein said response by said user is used during said active session to determine whether transmission of additional information related to said marketing content occurs during said active session. |  |

| | |
|---|---|
| 7.  A method for constructing a unified electronic banking environment, said method comprising the steps of: | |
| A) providing a common multi-channel server coupled to one or more e-banking touch points and also coupled to one or more computer systems, wherein each computer system is associated with a financial institution, said e-banking touch points being provided in locations remote from the other, and each of which comprise one or more of an automatic teller/transaction machine (ATM), a self-service coin counter (SSCC), a kiosk, a digital signage display, an online accessible banking website, a personal digital assistant (PDA), a personal computer (PC), a laptop, a wireless device, or a combination of two or more thereof, and wherein at least one of said e-banking touch points is in communication with one or more financial institutions through said multi-channel server; |  |

| | |
|---|---|
| B) receiving an actionable input from at least one e-banking touch point; | **Benefits of NCR Connections**<br>• User experience on the physical channel can now be consistent with other digital channels (gesture control, dynamic content etc.)<br>• Consumer experience can be highly personalized through simple integration with backend services (CRM and internal databases)<br>• Complementary technology choices to adjacent digital channels means maximum reuse of a customer's existing services, integrations and designs<br>• Tailor the services offered based on a wide variety of segments (consumer profile, location, time, terminal type etc.)<br>• Our server based architecture enables the enrichment of services on the client without any interruption or client software changes.<br><br>Separate "switching", transaction processing and terminal driving from business services delivers:<br>• Cost reductions<br>• Speed to market<br>• Switching reduced to a standard "commodity"<br>• Enable the agility the business requires to meet the demands of empowered consumers |
| C) retrieving previously stored data associated with said actionable input, wherein said previously stored data is accessible to any one of said e-banking touch points, and said previously stored data comprises data from one or more financial institutions and one or more user-defined preferences; | **OceanFirst Bank turns to NCR for omnichannel banking**<br>Adds advanced software and ATM technology to existing digital banking services with Digital Insight<br><br>DULUTH, Ga., January 14, 2014 – OceanFirst Bank, a $2.3 billion community bank serving central New Jersey, has chosen ATM software and hardware solutions from NCR Corporation (NYSE: NCR) in order to deliver an omnichannel banking experience. OceanFirst Bank's online and mobile banking experience is provided by Digital Insight, the leading provider of digital banking services, which NCR acquired in January 2014.<br><br>"NCR clearly has a vision for the future of omnichannel experiences in banking," said Joseph R. Iantosca, Executive Vice President and Chief Administrative Officer, OceanFirst Bank. "As we examined options for refreshing our ATM network, NCR stood out as an industry leader for deposit technology. Partnering with NCR provides OceanFirst Bank an exceptional resource to deliver extraordinary services to our customers while supporting our strategy to grow core deposits by utilizing more cost-effective channels than the traditional branch options. Also, having RMC ATM Solutions, an NCR provider, involved gives us the additional advantage of an in-market partner for the relationship. Finally, when we heard about NCR's intended acquisition of Digital Insight, we saw the benefit to consolidating our channels with a single vendor that could deliver both digital banking and self-service technologies."<br><br>OceanFirst Bank will install more than 20 NCR SelfServ ATMs with scalable deposit module (SDM). SDM allows bank customers to deposit cash and checks in a mixed bunch and as a single transaction to make deposits significantly twice as fast as typical ATM deposits. In addition, the bank will install NCR marketing software, including APTRA Connections, Promote and Exchange, to help personalize the ATM customer experience and deliver targeted promotions over the network.<br><br>"When we announced our acquisition of Digital Insight, we knew that many banks would see the value in delivering a holistic omnichannel experience to their customers," said Brian Bailey, vice president of marketing and strategy, NCR Financial Services. "OceanFirst Bank sees the opportunity for banking channels to operate outside of existing silos, and NCR is uniquely positioned to deliver that type of experience."<br><br>OceanFirst Bank is working with RMC ATM Solutions, an NCR solutions provider serving banks and credit unions throughout New York, New Jersey, Pennsylvania and Connecticut.<br><br>**About NCR Corporation**<br><br>NCR Corporation (NYSE: NCR) is the global leader in consumer transaction technologies, turning everyday interactions with businesses into exceptional experiences. With its software, hardware, and portfolio of services, NCR enables more than 450 million transactions daily across the retail, financial, travel, hospitality, telecom and technology industries. NCR solutions run the everyday transactions that make your life easier.<br><br>NCR is headquartered in Duluth, Georgia with over 26,000 employees and does business in 180 countries. NCR is a trademark of NCR Corporation in the United States and other countries. |

| | |
|---|---|
| D) delivering said retrieved data to said at least one e-banking touch point transmitting said actionable input; |  |

| | |
|---|---|
| E) storing transactional usage data associated with said at least one e-banking touch point transmitting said actionable input, wherein said stored transactional usage data is accessible by any one of said e-banking touch points and said one or more computer systems; |  |

| | |
|---|---|
| F) monitoring via said server said active session in real-time for selection of targeted marketing content correlated to said user-defined preferences; |  |
| G) subsequent to said monitoring, selecting in real-time said targeted marketing content correlated to said user-defined preferences; and <br> H) transmitting in real-time said targeted marketing content during said active session to at least one of said e-banking touch points for acceptance, rejection, or no response by a user, wherein said response by said user is used during said active session to determine whether transmission of additional information related to said marketing content occurs during said active session. | |

These allegations of infringement are preliminary and are therefore subject to change.

10. NCR has and continues to induce infringement. NCR has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to construct a unified banking system such as to cause infringement of one or more of claims 1–20 of the '508 patent, literally or under the doctrine of equivalents. Moreover, NCR has known of the '508 patent and the technology underlying it from at least the date of issuance of the patent.

11. NCR has and continues to contributorily infringe. NCR has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., construction of unified banking system) and related services that provide unified banking systems such as to cause infringement of one or more of claims 1–20 of the '508 patent, literally or under the doctrine of equivalents. Moreover, NCR has known of the '508 patent and the technology underlying it from at least the date of issuance of the patent.

12. NCR has caused and will continue to cause MCom damage by direct and indirect infringement of (including inducing infringement of) the claims of the '508 patent.

## IV.    JURY DEMAND

MCom hereby requests a trial by jury on issues so triable by right.

## V.    PRAYER FOR RELIEF

WHEREFORE, MCom prays for relief as follows:

a.  enter judgment that Defendant has infringed the claims of the '508 patent;

b.  award MCom damages in an amount sufficient to compensate it for Defendant's infringement of the '508 patent in an amount no less than a reasonable royalty or lost profits, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c.  award MCom an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement;

d.  declare this case to be "exceptional" under 35 U.S.C. § 285 and award MCom its attorneys' fees, expenses, and costs incurred in this action;

e.  declare Defendant's infringement to be willful and treble the damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. § 284;

f.  a decree addressing future infringement that either (i) awards a permanent injunction enjoining Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant from infringing the claims of the Patents-in-Suit, or (ii) awards damages for future infringement in lieu of an injunction in an amount consistent with the fact that for future infringement the Defendant will be an adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law; and

g.  award MCom such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Ramey & Schwaller, LLP**



William P. Ramey, III
Texas State Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com


Jeffrey Kubiak (Pro Hac Pending)
Texas State Bar No. 24028470
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
jkubiak@rameyfirm.com


***Attorneys for MCom IP, LLC***